713 So.2d 1142 (1998)
David MARX
v.
WHITNEY NATIONAL BANK.
No. 97-C-3213.
Supreme Court of Louisiana.
July 8, 1998.
*1143 Clay Justin LeGros, Newman, Mathis, Brady, Wakefield & Spedale, Metairie, for Applicant.
Stephen D. Marx, Chehardy, Sherman, Ellis, Breslin & Murray, Metairie, for Respondent.
Mark Philip Folse, Baton Rouge, for Amici Curiae Louisiana Bankers Association.
*1144 MARCUS, Justice.[*]
David Marx filed suit against the Whitney National Bank (hereinafter "Whitney") asserting that Whitney was obligated to restore to his checking account a total of $10,000 for five checks drawn on his account by a person whose signature was unauthorized. Stanley Marx and Maxine Marx Goodman were added to the same account in April 1995, and were named as additional plaintiffs by supplemental and amending petition.[1] Whitney declined to restore the funds paid out on the forged checks to the plaintiffs' account. It answered asserting that the failure of David Marx to exercise reasonable care in the handling of the account precluded relief.
The facts underlying this matter are undisputed by the parties. A joint stipulation of facts was entered into in connection with cross-motions for summary judgment. The joint stipulation and documents submitted with plaintiffs' petition and motion for summary judgment demonstrate the following. David Marx maintained a checking account at Whitney for which he received monthly statements. His January 1995 statement contained evidence of five forged checks totalling $2,373.00. He did not review his January 1995 statement. Nor did he review his statements for the months of February, March, and April of 1995. Had he reviewed the January through April 1995 statements, he would have discovered seventeen forged checks totalling almost $13,000.00. On April 24, 1995, two children of David Marx, Stanley Marx and Maxine Marx Goodman, were added as joint owners to the same account. Five additional checks were forged on the account in March, April, and May 1995 which first appeared on the May 1995 statement. Stanley Marx noticed these forged instruments when he reviewed the bank statement dated May 16, 1995 and the enclosed cancelled checks. At the behest of Stanley Marx, David Marx reported the forgeries to Whitney and executed an "Affidavit of Forgery, Alteration, Loss or Theft of Instrument and Subrogation and Hold Harmless Agreement" in which he identified his grandson, Joel Goodman, as both the maker and payee of the forged instruments. Plaintiffs asked Whitney to credit back to their account the funds paid out on the last five forgeries discovered and reported upon receipt of the May 1995 statement. The parties stipulated that Joel Goodman had access to David Marx's checkbook whenever he visited his grandfather, that he was the party who had forged all of the checks in question, and that David Marx was negligent for failing to review his January, February, March, and April 1995 statements.
The trial judge granted plaintiffs' motion for summary judgment, rendering judgment in plaintiffs' favor for $10,000, plus legal interest from date of judicial demand, and all costs of the proceedings. The court of appeal affirmed.[2] We granted certiorari to review the correctness of that decision.[3]
The sole issue for our review is whether the stipulated negligence of David Marx precludes recovery against Whitney by all joint owners on the account for the five forged checks honored by Whitney which were discovered and reported upon receipt of the May 1995 statement.
The law applicable to this case is found in Chapters Three and Four of the Louisiana Commercial Laws. Pursuant to Louisiana's Commercial Laws as well as the established jurisprudence prior to their adoption, the relationship between a bank and its depositor is a debtor-creditor relationship that is contractual in nature. Fidelity Nat'l. Bank of Baton Rouge v. Vuci, 224 La. 124, 68 So.2d 781 (1953); Etting v. Commercial *1145 Bank of New Orleans, 7 Rob. (LA) 459 (La. 1844); Delort Hardware Company, Inc. v. Peoples Bank and Trust Co., 490 So.2d 547 (La.App. 4th Cir.1986); Strother v. National American Bank, 384 So.2d 592 (La.App. 4th Cir.1980); First Nat'l. Bank of Ruston v. Pine Belt Producers Co-op, 363 So.2d 1201 (La.App. 2d Cir.1978); Davis v. Miller Builders & Developers, Inc., 340 So.2d 409 (La.App. 2d Cir.1976). The initial deposit of funds gives rise to the contract between bank and depositor; the subsequent creation of rights of others to an interest in an account involves an amendment of the original contract. 5A Mitchie on Banks and Banking 18 (M.J. Divine & G.E. Legner eds., Rev. ed.1994); 10 Am.Jur.2d Banking Institutions § 719 (2d ed.1997); Roberts v. Roberts, 827 S.W.2d 788 (Tenn.App.1991).
During the course of the contract with its depositor, a bank has the right to use the funds on deposit and, in consideration thereof, it covenants to pay funds out of the depositor's account only on the depositor's orders. First Nat'l. Bank v. Pine Belt Producers Co-op, 363 So.2d at 1204. La. R.S. 10:3-401 specifically provides that a person is not liable on an instrument unless the person signed the instrument. La. R.S. 10:3-403 further provides that an unauthorized signature is ineffective except as the signature of the unauthorized signer in favor of a person who in good faith pays the instrument or takes it for value. Accordingly, the general rule is that a bank is liable when it pays based upon a forged signature. Colonial Bank v. Marina Seafood Market, Inc., 425 So.2d 722 (La.1983); Columbia Finance Corp. v. Robitcheck, 243 La. 1084, 150 So.2d 23 (La.1963); Couvillon v. Whitney Nat'l. Bank of New Orleans, 218 La. 1096, 51 So.2d 798 (1951). A charge against a customer's account based on a forged instrument is not an authorized charge under the contract between the parties because the order to pay was not given by the customer. 6 Hawkland, Leary & Alderman UCC Series § 4-401:03 (Rev. ed.1996). For that reason, a banking customer can insist that the drawee bank recredit to his account any funds paid out on a forged instrument. James V. Vergai & Virginia V. Shue, Checks, Payments, and Electronic Banking 458 (Practicing Law Institute 1986); Fidelity Nat'l. Bank of Baton Rouge v. Vuci, 224 La. 124, 68 So.2d 781 (1953).
Notwithstanding the general rule that imposes the risk of loss for payment of a forged instrument on the drawee bank, the law provides that under certain circumstances a bank's customer may be precluded from asserting rights against the bank in connection with a forged check. Pursuant to La. R.S. 10:3-406 and 10:4-406, a customer is precluded from having funds paid out on a forged instrument restored to his account if his failure to exercise reasonable care in handling the account, either before or after the forgery, substantially contributed to the loss. In this case, Whitney asserted both statutory defenses in response to plaintiffs' motion for summary judgment.
La. R.S. 10:3-406 provides:
(a) A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.
(b) Under Subsection (a), if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss.
(c) Under Subsection (a), the burden of proving failure to exercise ordinary care is on the person asserting the preclusion. Under Subsection (b), the burden of proving failure to exercise ordinary care is on the person precluded.
La. R.S. 10:3-406 precludes a bank's customer from asserting a claim when the customer's conduct before a forgery substantially contributes to the making of the forgery. The burden of proving that the customer's handling of the account precludes *1146 recovery is on the bank. In this case, the bank asserted that David Marx substantially contributed to the forgeries and was precluded from making a claim against the bank by La. R.S. 10:3-406(a) because his grandson had access to his checkbook each time he visited the residence.[4] No further facts were stipulated by the parties concerning where or how the checkbook was kept, the manner in which the grandson obtained blank checks of his grandfather, the frequency of his visits, or whether the grandfather had reason to be suspicious that his checks might be taken and his name forged on them. The mere fact that one family member has access to checks at the residence of another family member, without more, does not establish a failure to exercise ordinary care substantially contributing to the making of a forged signature so as to preclude recovery on a forged instrument. Accordingly, Whitney did not carry its burden of proof that plaintiffs were precluded from recovery pursuant La. R.S. 10:3-406.
Whitney also defended against plaintiffs' motion for summary judgment by asserting that David Marx failed to discover and report the initial forgeries upon receipt of the January 1995 statement, thereby precluding recovery for any subsequent forgeries on the account by the same wrongdoer. La. R.S. 10:4-406 provides in pertinent part:
(c) If a bank sends or makes available a statement of account or items pursuant to Subsection (a), the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts.
(d) If the bank proves that the customer failed, with respect to an item, to comply with the duties imposed on the customer by Subsection (c), the customer is precluded from asserting against the bank:

(1) the customer's unauthorized signature or any alteration on the item, if the bank also proves that it suffered a loss by reason of the failure; and
(2) the customer's unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer had been afforded a reasonable period of time, not exceeding thirty days, in which to examine the item or statement of account and notify the bank. [Emphasis added].
The rule stated in Subsection (d)(2) imposes on the customer the risk of loss on all subsequent forgeries by the same wrongdoer after the customer had a reasonable time to detect an initial forgery if the bank has honored subsequent forgeries prior to notice. See Vigari & Shue, Checks, Payments and Electronic Banking at 464; Henry J. Bailey & Richard B. Hagedorn, 2 Brady on Bank Checks, the Law of Bank Checks Paragraph 32.06[2] (Rev. ed. 1997). Even before the adoption of the Uniform Commercial Code, case law throughout the country reflected the view that the suppression of forgery required a cooperative approach. Rules developed which shifted the risk of loss on certain forgeries to a customer who failed to give notice to the bank of forgeries and alterations. Out of the duty imposed on the customer to review his statement grew the rule that successive forgeries result from the failure of the customer to discover and report the initial forgeries which he could have detected had he acted in accord with the duty imposed by law upon him. Hawkland, Leary & Alderman, supra, § 4-406:01. See also De Feriet v. Bank of America, 23 La. Ann. 310 (1871).
*1147 Louisiana adopted La. R.S. 10:4-406 effective January 1, 1994 as part of a systematic revision of the law on banking deposits to bring Louisiana's Commercial Laws into harmony with the 1990 version of the Uniform Commercial Code. The 1990 Uniform Commercial Code Comment to the parallel provision adopted in Louisiana explains:
The rule of subsection (d)(2) follows pre-Code law that payment of an additional item or items bearing an unauthorized signature or alteration by the same wrongdoer is a loss suffered by the bank traceable to the customer's failure to exercise reasonable care in examining the statement and notifying the bank of objections to it. One of the most serious consequences of failure of the customer to comply with the requirements of subsection (c) is the opportunity presented to the wrongdoer to repeat the misdeeds.
In this case, plaintiffs have stipulated that David Marx did not review the January 1995 bank statement for his account and that if he had done so the unauthorized signature of his grandson on several checks would have been detected. Since he did not do so, plaintiffs are precluded from asserting against the bank all subsequent forgeries by the same unauthorized signatory. That being the case, plaintiffs are not in a position to recover against Whitney for the five forged checks that were discovered in the May 1995 statement which were forged by the same wrongdoer.[5]
Plaintiffs argue that the "same wrongdoer" rule results in absurd consequences because a very minor undetected forgery would preclude a later claim with respect to a potentially large forged instrument drawn by the same wrongdoer. However, in our view plaintiffs' protest illustrates precisely the risk that La. R.S. 10:4-406 allocates to the customer, who is in the best position to discover and report small forgeries before the wrongdoer is emboldened and attempts a larger misdeed.[6]
Plaintiffs further suggest that the prior conduct of David Marx should have no effect on the claims of Stanley Marx and Maxine Marx Goodman, who were not added to the account as owners until April 24, 1995 and who noticed and promptly reported the five checks sued upon after examination of the first statement sent to them. We do not agree.
Plaintiffs concede that if new owners had not been added to the account in April 1995, the failure of David Marx to examine and report the initial forgeries after receipt of the January 1995 statement would serve as an absolute bar to his recovery on the subsequent forgeries disclosed in the May 1995 statement. If plaintiffs' argument were accepted and the prior conduct of an account owner was deemed irrelevant to claims of new owners on the same account, a bank customer could subvert the operation of the "same wrongdoer" preclusion rule set forth in La. R.S. 10:4-406 simply by adding another person to the account, thereby defeating the system for allocation of risk adopted by our legislature. Indeed, in this case, plaintiffs' argument would allow David Marx to avoid operation of the preclusion rule and recover on the five checks at issue. Official Code Comment 7 to U.C.C. § 4-406, which has been adopted in Louisiana, provides:

*1148 Section 4-406 evidence[s] a public policy in favor of imposing on customers the duty of prompt examination of their bank statements and the notification of banks of forgeries and alterations and in favor of reasonable time limitations on the responsibility of banks for payment of forged or altered items.
7 Ronald A. Anderson, Uniform Commercial Code 451 (Rev.ed., 1995). We do not believe that the public policy embodied in La. R.S. 10:4-406 is furthered by allowing a customer to cleanse an account in which forgeries have occurred and avoid operation of the "same wrongdoer" preclusion rule by the simple device of adding another party to the same account.[7] Moreover, the contract with respect to the account in question was confected between Whitney and David Marx when David Marx first deposited funds into the account. The addition of new owners to the account constituted an amendment to the account contract, which left in place all defenses already acquired by the bank. Whitney's defense to recrediting the account for funds paid out pursuant to checks forged by the same wrongdoer vested no later than thirty days after David Marx received the January 1995 statement containing instruments forged by Joel Goodman. La. R.S. 10:4-406. The addition of new owners to the account in April 1995 could not defeat defenses which had already attached in favor of the bank. Whitney carried its burden of proof to defeat plaintiffs' motion for summary judgment on the basis of the preclusion defense afforded pursuant to La. R.S. 10:4-406. The court of appeal erred in affirming the trial judge's grant of summary judgment in favor of plaintiffs. We must reverse.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed. Plaintiffs' motion for summary judgment is denied. The case is remanded to the district court for further proceedings.
NOTES
[*] Victory, J., not on panel. Rule IV, Part 2, § 3.
[1] David Marx's account bore account number XX-XXX-XXX. Maxine Marx Goodman and Stanley Marx were added to this account, which was thereafter styled "David Marx or Maxine Marx or Stanley Marx."
[2] 97-607 (La.App. 5th Cir. 11/25/97), 703 So.2d 790.
[3] 97-3213 (La.3/27/98), ___ So.2d ___. Because the trial judge's ruling granting summary judgment in favor of plaintiffs is the only matter presented for our review, the reconventional demand and third-party claims of Whitney and the trial judge's previous ruling denying Whitney's exception of no right of action regarding Maxine Marx Goodman and Stanley Marx are not before us.
[4] Contrary to the suggestion of Whitney, we do not interpret the stipulation regarding the negligence of David Marx as applicable to his handling of his checkbook prior to the forgeries. Rather, we view the stipulation of negligence as applicable only to his failure to review his monthly bank statements and facts surrounding that failure. Whitney made no claim that Maxine Marx Goodman or Stanley Marx contributed to the making of the forgery.
[5] Compliance by David Marx with the duty imposed upon him to timely discover and report forged instruments would have given Whitney the opportunity to seek prompt restitution for the $2,373.00 in checks that appeared with the January 1995 statement and might have prevented the forgeries totalling $10,000.00 that appeared in the May 1995 statement.
[6] The preclusion in La. R.S. 10:4-406 only operates to exonerate the bank when the bank itself has acted reasonably in honoring the instrument in dispute. La. R.S. 10:4-406(e) provides:

(e) If Subsection (d) applies and the customer proves that the bank failed to exercise ordinary care in paying the item and that the failure substantially contributed to loss, the loss is allocated between the customer precluded and the bank asserting the preclusion according to the extent to which the failure of the customer to comply with Subsection (c) and the failure of the bank to exercise ordinary care contributed to the loss. If the customer proves that the bank did not pay the item in good faith, the preclusion under Subsection (d) does not apply.
In this case no claim was made that Whitney failed to exercise ordinary care when it honored the forged checks.
[7] Because modern banking practices make it possible for customers to discover irregularities in their accounts long before receipt of a monthly statement, plaintiffs' interpretation of the law would permit a party statutorily precluded from recovering on a forgery by a repeated wrongdoer to revive his rights by adding a party to his account prior to receipt of his monthly statement. Thus, it would permit an account holder who has allowed forged checks to go unreported for months (intentionally or negligently) and who learns of or suspects another forgery by a repeated wrongdoer (through notice of an overdraft, belated examination of statements, or confrontation of the wrongdoer) to shift the risk of loss back to the bank by adding a new party to the account.