CHEHARDY, C.J.
Lin this appeal, plaintiff, American Turbine Technology, Inc., seeks review of the district court’s July 14, 2016 judgment granting summary judgment in favor of defendant, Omni Bank, and dismissing plaintiffs action with prejudice. For the reasons that follow, we reverse this judgment and remand the matter for proceedings consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
Philip Pawlicki is the sole shareholder and president of American Turbine Technology, Inc. (“American”). Mr. Pawlicki hired Nicole Nicholas in 1999 as office coordinator and fired her in 2010 after discovering that she had converted company funds to her personal use. As office coordinator, Ms. Nicholas had a wide array of responsibilities, which included, among many other things, receiving mail, answering phones, bookkeeping, and managing all aspects of the company’s finances. Because Mr. Pawlicki travelled a lot for business, Ms. Nicholas was also permitted, with the requisite authorization, to conduct company business on behalf of the company with a facsimile stamp of Mr. Pawlicki’s signature.
On April 12, 2000, American obtained a $150,000 line of credit from Omni Bank (“Omni”), evidenced by a promissory note (the “master note”) in that amount signed by Mr. Pawlicki on behalf of American. This was secured with, among other things, a collateral mortgage on Mr. Pawl-icki’s personal property and a personal guaranty by Mr. Pawlicki. Terry Hall was the Omni loan officer who assisted Mr. Pawlicki in opening this line of credit and was assigned to manage it. Mr. Hall was replaced by Brian Heiden in 2003.
Mr. Pawlicki testified that when requesting a disbursement on this line of credit, he did so orally over the phone with Omni. He maintains that he only made three oral requests on the credit line: $10,000, $25,000, and $10,000. Conversely, |gMs. Nicholas testified that Mr. Pawlicki notified her when he wanted to draw on *191 the line of credit, and that she submitted the requests to Omni via fax stamped with his signature.
There was also disagreement as where the funds were deposited after they were disbursed. Mr. Pawlicki explained it was his understanding that the funds were wired directly into American’s primary operating account at Chase Bank (formerly “Bank One”). On the other hand, both Mr. Heiden and Ms. Nicholas explained that the disbursed funds were initially deposited into American’s account at Omni. Though Mr. Pawlicki • disputes that this account existed, Mr. Heiden attested that Omni’s records indicate a bank account was opened at Omni in the name of American in connection with the line of credit. Additional evidence in the record reflects that a commercial checking account in the name of American was opened at Omni on May 10, 2000; and the signature card executed at the time this account was opened expressly permitted the use of facsimile signatures in connection with the account. Notwithstanding this evidence, Mr. Pawl-icki persistently repudiated any knowledge of this account. But according to Ms. Nicholas and Mr. Heiden, it was into this account that funds disbursed on the line of credit were first deposited. Ms. Nicholas then issued checks from this Omni account with the signature stamp and deposited them into the Chase account, from where they were put to company use, according to her. to
American alleges that Ms. Nicholas abused this process between May 2002 and December 2003 whereby she used the signature stamp without Mr. Pawlicki’s authorization to request disbursements of funds from the line of credit, totaling $140,000.[1] American contends that after the funds had been transferred from the Omni account to the Chase account, Ms. Nicholas converted the funds from the isChase account to her personal use. Thus, American concedes in its brief that “the advances transferred, by [Ms. Nicholas] from Omni Bank to Bank One/Chase cannot be linked directly to specific acts of theft by [Ms. Nicholas] on specific dates.”
Ms. Nicholas denies' these allegations. She avows that each of these disbursement requests was made at Mr. Pawlicki’s instruction and that the funds were ultimately put to company use. As it turned out, Ms. Nicholas pled guilty in federal court to forgery in 2013 and was ordered to pay restitution to Mr. Pawlicki in the amount of $65,295.73. The factual basis offered by the government for this guilty plea was that Ms. Nicholas issued unauthorized checks from American’s Chase account with Mr. Pawlicki’s signature stamp totaling $65,295.73 for private school tuition, mortgage payments, and other personal items.
American also alleges that Ms. Nicholas took additional steps to conceal and continue her crime. American contends that Ms. Nicholas used Mr. Pawlicki’s signature stamp without his authorization to renew the line of credit at Omni. The line of credit was renewed annually on five occasions: April 25, 2001, April 29, 2002, September 26, 2003, September 24, 2004, and February 23, 2006.[2] Mr, Pawlicki admits that he authorized the renewals in 2001 and 2002, but alleges that Ms. Nicholas forged the latter three. Ms. Nicholas denies that she forged any of these documents. Mr. Heiden testified that he could not specifically recall witnessing Mr. Pawl-icki signing the renewals, but he explained *192 that he often dropped off the documents to Ms. Nicholas and received them back bearing Mr. Pawlicki’s signature.
In or around June of 2006, the line of credit reflected an outstanding balance of approximately $101,000. This balance evidently had not changed for some 14time, as Mr. Heiden explained that the outstanding balance as of December 31, 2004 was $101,111. This debt was reflected in American’s 2004 corporate income tax return, in which the line for “Mortgages, notes, bonds payable in less than 1 year” 'reflected an amount of $101,111. Although Mr. Pawlicki stated that he had not signed this return that was filed with the IRS, he acknowledged that it bore his signature stamp and was dated September 12, 2006. So, because the line of credit was still stagnant in June of 2006, Omni did not offer to renew the line of credit. Instead, it was converted to an amortized term loan. American alleges that the promissory note executed on June 16, 2006 converting the line of credit to this term loan was also forged by Ms. Nicholas.
American further claims that Ms. Nicholas changed American’s' address on file with Omni without Mr. Pawlicki’s authorization in her efforts to conceal her crime. In March of 2002, Omni received a request to change American’s address on file to a P.O. Box. Ms. Nicholas explained that she submitted this request at Mr. Pawlicki’s instruction to facilitate the receipt of company mail; As a result, for ‘ a time, all correspondence from Omni was sent to the P.O. Box, of which Mr. Pawlicki maintains he was unawai-e.
Mr. Heiden attested that in connection with American’s bank account, Omni sent by U.S. mail monthly account statements to the address on file, which was at various times American’s business address and the P.O. .Box. In connection with American’s line of credit, Mr. Heiden attested that Omni sent by U.S. mail statements and notices regarding the loan and guaranty to the address on file, which was at various times American’s business addresses,[3] Mr. Pawlicki’s personal addresses, and the P.O'. Box.
|fiMr. Pawlicki maintains that he never received or reviewed any statements from Omni. He also admitted that he never received or reviewed any statements from American’s Chase account. Indeed, Ms. Nicholas stated that she never saw Mr. Pawlicki look at any bank statements. Mr. Pawlicki even admitted that had he timely reviewed American’s bank statements, he would have discovered the alleged misappropriations.
Mr. Pawlicki also admitted that he never reviewed or sought to review documents from Omni to ensure that debt on the line of credit was being paid off. He just “assumed” there was no balance. Based on this assumption, and despite knowing that annual renewals were required for the line of credit, Mr. Pawlicki disregarded the lack of correspondence from Omni and chose not to inquire further into the matter.
This was in keeping with Mr. Pawlicki’s hands-off management style. He admitted that he never reviewed any of American’s files, books, records, or any other financial documents, because, as he explained, “It wasn’t my style.” He entrusted' Ms. Nicholas to handle all of American’s accounting, banking, and finances with minimal oversight.
*193 Eventually American’s loan was placed into default. On December 24, 2007, Mr. Heiden sent by certified mail a letter to Mr. Pawlicki’s home address advising him that the loan was in default. Mr. Pawlicki claimed that he never received this letter.
Mr. Heiden followed this letter "with another sent by certified mail on March 11, 2008 to Mr. Pawlicki’s home address. In this letter, Omni advised Mr,.Pawlicki that the collateral property securing the loan had been sold at a tax sale due to delinquent property taxes. The letter further explained: “As a reminder, you have pledged a mortgage of this property to secure the loan of American Turbine. The delinquent taxes are a violation of the mortgage and place your loan in [ f,default.” This letter included a Certified Mail Receipt that Mr. Pawlicki acknowledged bore his signature. He explained that when he received this letter, he called Ms. Nicholas and told her, “You need to fix this.” He had expected Ms. Nicholas to pay the property taxes on his personal properties as part of her job responsibilities.
Then, in 2009, Mr. Pawlicki began receiving collection calls. He looked into the matter and learned that his bank statements had been sent to the P.O. Box of which he claimed no knowledge. This prompted him to further investigate his company’s finances. Based on his investigation, Mr. Pawlicki determined that Ms. Nicholas had been misappropriating company funds from American’s Chase account. Mr. Pawlicki closed the account and opened a new one on November 17, 2009.
After discovering Ms. Nicholas’ activities in the Chase account, Mr. Pawlicki began to investigate American’s accounts with Omni. In a meeting .with Mr. Heiden on or about March 14, 2010, Mr. Pawlicki claims he learned for the first time that the line of credit had been converted to a term loan and had an outstanding balance of $94,876.72. Mr. Pawlicki admitted that after learning this, in or around this time, he made several payments on the loan totaling $90,000.
On March 9, 2011, American filed a “Petition for Nullity or Rescission of Contract, for Breach of Contract and for Damages for Conversion.” In this petition, American named as defendants Omni, Ms.- Nicholas, Ms. Nicholas’ husband, and her father. American alleged that Ms. Nicholas had converted $140,000 of company funds that originated from the Omni line of credit between May 2002 and December 2003 and that Mr. Pawlicki did not first learn of this until on or about March 14, 2010. American sought to recover from Omni on the bases that Omni had breached the master note by honoring unauthorized advance requests by Ms. Nicholas and that the forged 2003, 2004, and 2006 promissory 17notes to renew the line of credit and the 2006 forged note converting the line of credit to a term loan were relative nullities.
On May 5, 2011, Omni answered American’s petition and filed a reconventional demand, seeking under the defaulted note: (1) principal in the amount of $8,713.60, (2) interest from maturity until paid at the default rate of 18% per annum' until paid, (3) attorney’s fees in the amount of 25%, and (4) all costs of the proceedings, including court costs and sheriffs costs.
On February 26, 2016, Omni filed a motion for summary judgment arguing American’s claims against Omni were prescribed under the Louisiana Uniform Commercial Code (“UCC”). The court heard this matter on May 31, 2016. In its judgment that followed on July 14, 2016, the court agreed that American’s claims against Omni were prescribed and granted summary judgment in favor of Omni, dismissing American’s claims,with prejudice. *194 The court provided the following reasons for its judgment:
The Court finds that the plaintiffs claims against Omni Bank are barred by the one-year prescriptive period for conversion of instruments under La. R.S. 10:3-420.
The Court finds that American Turbine’s 2004 tax return listed $101,111, the exact amounts plaintiff owed to Omni Bank, on “[mjortgages, notes, bonds payable in less than 1 year.” The Court further finds that plaintiffs president, Philip Pawlicki, signed this document on September 12, 2006, more than four years before filing suit.
The Court finds that the plaintiffs admission on the tax return of the amount owed to Omni Bank is evidence that the plaintiff either knew or should have known of the debt to Omni Bank years before filing suit in 2011.
The Court further finds that even if the plaintiffs claims had not prescribed under La. R.S. 10:3-420, they would have prescribed under the provisions of La. R.S. 10:4-406.
On July 25, 2016, American filed a motion for new trial, arguing the court’s judgment of July 14 was contrary to the law and evidence. This matter was heard on September 8, 2016 and denied on September 19, 2016. On American’s motion, the court, on September 26, 2016, designated its judgment of July 14, 2016 as final | ¡¡and appealable in accordance with La. C.C.P. art. 1915(B)(1). American’s appeal followed.
ASSIGNMENTS OF ERROR
On appeal, American raises four assignments of error:
1.The district court erred by dismissing as prescribed Plaintiffs claims for return of funds paid on the unauthorized advances against Plaintiffs line of credit.
2. The district court erred by dismissing as prescribed Plaintiffs claims for return of funds paid on the forged superseding renewal and term notes.
3. The district court erred by dismissing as prescribed Plaintiffs claim for rescission of the Master note and ancillary agreements as relatively null.
4. The district court erred in making findings of fact, resolving genuinely disputed facts in favor of the mover, and basing its summary judgment on these findings.
DISCUSSION
In American’s first, second, and third assignments of error, it argues that the district court erred in granting Omni’s motion for summary judgment and dismissing its claims with prejudice. Though each of these assignments of error addresses a different claim raised by American, all three are subject to the same standard of review here on appeal, which we now set forth before addressing each in turn.
A judgment granting a motion for summary judgment is subject to de novo review. Richthofen v. Medina, 14-294 (La. App. 5 Cir. 10/29/14), 164 So.3d 231, 234, writ denied, 14-2514 (La. 3/13/15), 161 So.3d 639. Under this standard of review, we use the same criteria as the trial court in determining if summary judgment is appropriate: whether there is a genuine issue as to material fact and whether the mover is entitled to judgment as a matter of law. Id.
“[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a *195 matter of law.” La. C.C.P. art. 966(A)(3). “[I]f the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense.” La. C.C.P. art. 966(D)(1). “The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.” Id.
Here, Omni is the mover who will not bear the burden of proof at trial. Accordingly, in its motion for summary judgment, Omni sought to point out the absence of an essential element of American’s claims: timeliness.
In granting Omni’s motion for summary judgment and finding American’s claims prescribed, the district court did not distinguish amongst the causes of action asserted by American in its petition. Rather, as the courts’ reasons for judgment make clear, the court found all of American’s claims sounded in conversion under the UCC and found them prescribed under La. R.S. 10:3-420 and La. R.S. 10:4-406.
Now on appeal, wé determine the correctness of this ruling!

Assignment of Error One

In American’s first assignment of error, it argues that the district court erred in finding prescribed its action seeking a return of funds disbursed pursuant to unauthorized advance requests on the Omni line of credit. American casts this action as a breach of contract, arguing the advances made pursuant- to Ms. Nicholas’ requests were in violation of the master note because they were not authorized by Mr. Pawlicki. American submits that this breach of contract action is not governed by .the Louisiana UCC, and, therefore, is not subject to the one-j myear prescriptive period under-the UCC, but as a personal action is subject to liberative prescription of ten years under La. C.C. art. 3499.[4]
American bases' its breach of contract action' on the following provision of the master note signed by Mr. Pawlicki on behalf of American on April 12, 2000:
LINE OF CREDIT. This Note evidences a revolving line of credit “master note”. Advances under this Note, as well as directions for payment from Borrower’s accounts, may be requested orally or in writing by Borrower or by an authorized person.' Lender may, but need not, require that all oral requests be confirmed in writing. The following party or parties are authorized to request advances under the line of credit until Lender receives from Borrower at Lender’s address shown above written notice of revocation of their authority: PHILIP M. PAWLICKI, PRESIDENT.
Omni does not specifically respond to this or American’s other assignments of error, but offers general argument that American’s actions are nothing more than claims for instrument conversion that are exclusively governed by the UCC.[5] Omni *196 posits that because American’s damaged essentially flow from the conversion of checks drawn on the Chase account, American’s casting its action- as anything-, but conversion is, an attempt to circumvent the UCC.
It is well settled that “the prescriptive' period applicable to an action is determined by the character of the action disclosed in the pleadings.” Born v. City of Slidell, 16-0136 (La. 10/14/15), 180 So.3d 1227, 1232. At the same time, however, courts do not take at face value parties’ descriptions of actions in their pleadings. Courts must .also look through a pleading’s caption, style, and form to determine its substance and to do substantial justice, to the parties. Metro Riverboat Assocs. v. La. Gaming Control Bd., 01-0185 (La. 10/16/01), 797 So.2d 656, 660. Therefore, considering American’s petition, the facts of this case, and the law, we look to determine the nature of this a’ction and the applicable prescriptive period.
We begin with the Louisiana Supreme Court’s holding that.a written advance request on a line of credit is not governed by Chapter 3 (La. R.S. 10:3-101, et seq.) or Chapter 4 (La. R.S. 10:4-101, et seq.) of the Louisiana UCC. In Par. Nat’l Bank v. Ott, 02-1562 (La. 2/25/03), 841 So.2d 749, a husband and wife, Dr. Ott and Ms. Galla-van, obtained a line of credit for a real estate business of which both were shareholders. Ott, 841 So.2d at 750. The credit line was issued in both their names and advance requests required both their signatures. Id. After five advance requests were made, purportedly by both the husband and wife, Dr. Ott learned that his wife had been signing his name without his authority. Id. at 750-51. He instructed his wife to stop signing his name, but never notified the bank. Id. at 751. After two more advances were made, Dr. Ott notified the bank of the forgeries and refused to pay the debt. Id. The line, of credit went into default and the bank filed suit against both Dr. Ott and Ms. Gallavan. Id. A default judgment was entered against Ms. Gallavan, and the bank pursued its claims against Dr, Ott. Id. These claims were based on theories of ratification or confirmation of the debt, estoppel and breach of a duty to supervise his wife, and failure, to timely notify, the bank of any unauthorized activities. Id.
After a trial on the merits, the district court ruled in favor of Dr. Ott, which the Fourth Circuit affirmed on appeal. See Par. Nat’l Bank v. Ott, 00-0163 (La.App. 4 Cir. 4/17/02), 817 So.2d 295. On certiorari review, however, the Louisiana Supreme Court reversed in part, finding Dr. Ott “liable for the draw requests made... after he knew that unauthorized draw requests had been made on the account and had an opportunity to prevent any future unauthorized draw requests.” Ott, 02-1562, 841 So.2d at 752. In reaching this conclusion, the.court noted “there are no special rules applicable to unauthorized draw, requests such as those found |12in the Louisiana version of the UCC regarding negotiable instruments and bank deposits and collections[.]” Ott at 754. The court further observed:
The written draw requests in this matter are not “instruments” as defined under Louisiana’s version of the UCC, La. R.S. 10:3—104(b), and thus not governed by the Negotiable Instrument provisions of UCC Chapter 3. Further, the draw requests are not “items” and accordingly not governed by the Bank Deposit and Collections provisions of UCC Chapter 4. Specifically, the rules and standards of conduct for banks and depositors are not directly applicable, such as the time *197 limit for when a deposit account owner must notify the drawer bank of an unauthorized check. La. R.S. 10:4-406.
Id. at 754 n.9.
Nevertheless, the court noted that “there are specific rules governing the promissory note signed by [the husband], which is a negotiable instrument governed by Title 10, La. R.S. 10:1-203, which provides ‘every contract or duty within this Title imposes an obligation of good faith in its performance or enforcement.’ ”[6] Ott at 754. The court concluded this obligation of good faith imposed by La. R.S. 10:1-203 required Dr. Ott to notify the bank of the forgeries after he became aware of the unauthorized advance requests. Id. at 755-56. His failure to do so rendered him liable for the latter two advance requests. Id,
The court also considered the exception of prescription, which Dr. Ott had raised for the first time on certiorari review, arguing the bank’s claims had prescribed. Ott at 752. The court rejected this, offering the following analysis:
Dr. Ott argues any such claim related to a “duty” to disclose arises ex delicto, which has a liberative prescription of one year.. Dr. Ott asserts that [the bank] had one year from the date of the last unauthorized draw request, which was January 18, 1995, to file suit. Thus, Dr. Ott concludes that since [the bank] did not file suit until April 1996, its petition is prescribed on its face. In opposition, [the bank] contends the nature of its action arises ex contractu in that Dr. Ott’s duty to disclose- arose from the terms of the loan itself and from the obligation to perform contracts in good faith, which is imposed by | islaw. Under this theory of liability, [the bank] asserts a liberative prescription of five years is applicable according to La. C.C. art. 3498.[7] It'further, asserts the applicable five-year prescriptive period commenced to run when the loan matured on May 26, 1996. Regarding prescription under the facts of this case, La. C.C. art. 3498 provides in pertinent part that “actions on instruments, whether negotiable or not, and on promissory notes, whether negotiable or not, are subject to a libera-five prescription of five years.” This case arises from a promissory note executed by Dr. Ott and Ms. Gallavan in May 1994, which [the bank] alleged was past due, delinquent and in default. The “causes -of action” alleged to have prescribed by Dr. Ott are not causes of action, rather they are arguments made in response to Dr. Ott’s defense of forgery and unauthorized draw requests. In sum, considering the note was executed in May 1994 and suit for collection was filed in April 1996, the note had not prescribed.
Id. at 752-53 (Footnote added).
In the present ease, inasmuch as American’s' action is based on unauthorized ad- *198 vanee requests, pursuant to Ott, we find this action is not governed by the Louisiana UCC. Therefore, we conclude the district court erred in finding this action was prescribed under La. R.S. 10:3-420 and La. R.S. 10:4-406. Because this action arises from the terms of the promissory note itself, in view of Ott, we also find that this action should be subject to the prescriptive period of five years under La. C.C. art. 3498. We decline to ultimately decide the issue of prescription here because that peremptory exception was not pleaded below or on appeal.[8]

Assignment of Error Two

In American’s second assignment of error, it argues that the district court erred in finding prescribed its claim seeking a return of funds paid on the forged renewal and term notes. American alleges that the promissory notes executed in 2003, 2004, and 2006 to renew the line of credit and the promissory note executed in 2006 to convert the line of credit to a term loan were executed by Ms. Nicholas | ^without Mr. Pawlicki’s authorization and so are relatively null under La. C.C. art. 2031.
In response, Omni’s general argument again is that American’s action is exclusively governed by the UCC because American’s damages essentially flow from the conversion of checks drawn on the Chase account.
As we noted above, “the prescriptive period applicable to an action is determined by the character of the action disclosed in the pleadings.” Born, supra. We find American’s cause of action here does not meet the definition of an action for instrument conversion under La. R.S. 10:3-420(a). American’s petition states a cause of action for annulment of the promissory notes on the basis of fraud under La. C.C. arts. 2031 and 2033. As a result, we find the district court erred in finding the prescriptive period of La. R.S. 10:3-420(f) applied to this cause of action.
Next, we determine whether La. R.S. 10:4-406 governs American’s action for annulment here. Captioned “Customer’s duty to discover and report unauthorized signature or alteration!,]”[9] La. R.S. 10:4-406 is premised upon “a public policy in favor of imposing on customers the duty of prompt examination of their bank statements and the notification of banks of forgeries and alterations]].]” Marx v. Whitney Nat'l Bank, 97-3213 (La. 7/8/98), 713 So.2d 1142, 1148 (quotation omitted). This is based on the theory of risk allocation that between the customer and the bank, the customer is the party better suited to detect íraud in the customer’s account. Accordingly, “[p]ursuant to La. R.S. 10:3-406[10] and 10:4-406, a customer is precluded from having funds paid out on a forged instrument restored to his account if his failure to exercise reasonable care in handling the account, either before or after the forgery, substantially contributed to the loss.” Id. at 1146.
11KNecessarily, the customer’s performance of his duty is conditioned upon the *199 bank’s making account statements available to the customer:
If a bank sends or makes available a statement of account or items pursuant to Subsection (a), the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts.
La. R.S. 10:4-406(c) (Emphasis added).
Thus, according to the very terms of La. R.S. 10:4-406, and its underlying rationale, we find this statute only governs scenarios in which a bank “sends or makes available to a customer a statement of account showing payment of items for the account!;.]” La. R.S. 10:4-406(a).
Subsection (f) is the provision under which Omni asserted, and the district court agreed, that American’s action had prescribed. It provides in pertinent part:
Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer (Subsection (a)) discover and report the customer’s unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration.
La. R.S. 10:4-406(f) (Emphasis added).
The emphasized language in this subsection again makes clear that La. R.S. 10:4-406 and Subsection (f)’s preclusion only apply when account statements are made available to the customer. Unlike checks that appear in monthly account statements, the promissory notes at issue here do not appear in account statements. They reflect an obligation to the bank on a revolving line of credit and a term loan. For this reason, we find the district court erred in finding La. R.S. 10:4-406 governed this cause of action.
hfiWe find American’s action for annulment should be subject to the prescriptive period of La. C.C. art. 2032, which provides: “Action of annulment of a relatively null contract must be brought within five years from the time the ground for nullity either ceased, as in the case of incapacity or duress, or was discovered, as in the case of error or fraud.” For the same reasons noted above in our discussion of American’s first assignment of error, we decline to ultimately decide the issue of prescription here too.

Assignment of Error Three

In American’s third assignment of error, it argues that the district court erred in finding prescribed its claim for rescission of the master note and ancillary agreements as relatively null. American submits in its brief that its “[petition states a claim for declaration of relative nullity of the original Master Note, as well as the ancillary agreements thereto, including the collateral mortgage and guaranty agreement.” Upon our review, we do not find American’s petition states any such claim. Accordingly, we find this assignment of error without merit.

Assignment of Error Four

In American’s fourth assignment of error, it argues that the district court erred in making findings of fact, resolving genuinely disputed facts in favor of the mover, and basing its summary judgment on these findings. In view of our rulings herein, this assignment of error is moot.
*200 DECREE
For the foregoing reasons, we reverse the district court’s July 14, 2016 judgment granting Omni’s motion for summary judgment on the basis of prescription and remand the case for further proceedings consistent with this opinion.
REVERSED; REMANDED

. This figure is reflected in American's petition.

. Hurricane Katrina in August 2005 postponed that year's renewal until February 2006.

. During the period in " question, American • relocated its place of business from Gretna to Kenner.

. La. C.C. art. 3499 provides: "Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years.”

. La. R.S. 10:3-420(a) provides three definitions of instrument conversion. Omni contends American’s actions are based on the third definition, which provides: "An instrument is converted when. Lit is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to *196 enforce the instrument or receive payment.” La. R.S. 10:3-420(a)(iii).

. La. R.S. 10:1-203 was amended and reenacted as La. R.S. 10:1-304 in 2006. See Acts 2006, No. 533, § 1.
Prior to 2006, La. R.S. 10:1-203 provided: "Every contract or duty within this Title imposes an obligation of good faith in its performance or enforcement. The standard of good faith performance required under this Title shall be based upon Civil Code Articles 1983, 1996, and 1997.”
Today, La. R.S. 10:1-304 provides: "Every contract or duty within this Title imposes an obligation of good faith in its performance and enforcement. Under this Section, ‘good faith’ has the meaning with which that term is used in the title on ‘Conventional Obligations or Contracts’ in'the Louisiana Civil Code.”

. La. C.C. art. 3498 provides: "Actions on instruments, whether negotiable or not, and ' on promissory notes, whether negotiable or not, are subject to a liberative prescription of five years. This prescription commences to run from the day payment is exigible.”

. Pursuant to La. C.C.P. art. 927(B), a "court may not supply the objection of prescription, which shall be specially pleaded.” La. C.C.P. art. 2163 permits an appellate court to consider a peremptory exception "filed for the first time in that court, if pleaded prior to a submission of the case for a decision, and if proof of the ground of the exception appears of record.”

. " ‘Unauthorized signature' means a signature made without actual, implied, or apparent authority. The term includes a forgery.” La. R.S. 10:1-201(41).

. "La. R.S. 10:3-406 precludes a bank’s customer from asserting a claim when the customer’s conduct before- a forgery substantially contributes to the making of the forgery.” Marx at 1145, (Emphasis original).