# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-31057
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
March 19, 2019

Lyle W. Cayce
Clerk

GRODNER & ASSOCIATES,

     Plaintiff - Appellant

v.

REGIONS BANK,

     Defendant - Appellee

---

Appeal from the United States District Court
for the Middle District of Louisiana
USDC 3:17-CV-44

---

Before KING, SOUTHWICK, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

     The plaintiff appeals from the district court's grant of summary judgment to the defendant bank. Because the plaintiff's claims are untimely under the parties' deposit agreement, we AFFIRM.

---

     * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-31057

## BACKGROUND

Grodner & Associates is a law firm based in Baton Rouge, Louisiana. It was defrauded by its bookkeeper, Anna Alford, who wrote checks and initiated Automated Clearing House transactions to herself from two accounts Grodner maintained at Regions Bank. The fraud began in March 2015 and remained undetected until June 2016, when Grodner's managing member bounced a personal check. Alford allegedly had concealed her fraud by intercepting and photoshopping the account statements Regions sent to Grodner.

Grodner brought claims for conversion and negligence against Regions for the unauthorized payments initiated by Alford. The district court concluded that Grodner's claims were untimely because Grodner failed to notify Regions of the fraud until more than one year after first receiving a statement with an unauthorized payment to Alford. Grodner timely appealed.

## DISCUSSION

"We review *de novo* the district court's ruling on a motion for summary judgment, applying the same legal standard as the district court in the first instance," which is that "[s]ummary judgment is appropriate if 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact.'" *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008) (quoting FED. R. CIV. P. 56(c)).

Alford initiated fraudulent payments from two accounts Grodner maintained with Regions: an "operating" account and a "trust" account. These account relationships were governed by a deposit agreement[1] which required

---

[1] The deposit agreement in place when Grodner opened the accounts in 2009 was superseded in 2015, but the provision relevant to our analysis was the same in both iterations.

No. 18-31057

Grodner to make a prompt examination of its account statements and notify Regions in writing of any unauthorized payments or other discrepancies.[2]

The deposit agreement also provided that Grodner would "be precluded from asserting against [Regions] any unauthorized signature or alteration by the same wrongdoer on any item paid in good faith on or after 10 calendar days after the first statement describing the first altered or unauthorized items was sent or made available." This provision was explicitly "intend[ed] to define a reasonable time period for the examination of bank statements for the purposes of the 'Repeater Rule,' or the 'Same Wrongdoer' rule as provided in § 4-406(d) of the UCC."

This rule is statutorily codified in Louisiana as LA. STAT. ANN. § 10:4-406(d) (2018). It "imposes on the customer the risk of loss on all subsequent forgeries by the *same wrongdoer* after the customer had a reasonable time to detect an initial forgery if the bank has honored subsequent forgeries prior to notice." *Marx v. Whitney Nat'l Bank*, 713 So. 2d 1142, 1146 (La. 1998).

During discovery, Grodner admitted that the first fraudulent transaction for both accounts occurred in March 2015. Grodner also admitted that in April 2015 Regions sent the account statements that included these unauthorized transactions. Finally, Grodner admitted that it did not notify Regions about Alford's fraud until June 2016, more than a year after Regions first sent account statements identifying unauthorized transactions initiated by Alford.

Grodner's failure to notify Regions of the first unauthorized payments within ten days of the April 2015 statement means that it is "precluded from

---

[2] "You are responsible for exercising reasonable promptness in examining your account statement each statement period . . . to determine whether any payment or debit was not authorized because of an alteration of an item or because a signature or [e]ndorsement on the item was unauthorized, or for any other discrepancy or reason for which you believe that the debit is not correct. If you discover an unauthorized payment or other discrepancy, you must promptly notify us in writing of the relevant facts."

No. 18-31057

asserting against the bank *all subsequent forgeries* by the *same* unauthorized signatory." *Id.* at 1147. Grodner's allegation that Alford tampered with the statements is irrelevant because the "same wrongdoer rule" only requires that Regions sent or made available the statements, not that Grodner received them intact. LA. STAT. ANN. § 10:4-406(c) (2018); *see, e.g., Groue v. Capital One*, 47 So. 3d. 1038, 1042-43 (La. Ct. App. 2010).

There is a caveat in LA. STAT. ANN. § 10:4-406. Claims against the bank are precluded only "when the bank itself has acted reasonably in honoring the instrument in dispute." *Marx*, 713 So. 2d at 1147 n.6. Grodner, though, "failed to offer competent proof that the Bank's practices failed to comport with ordinary care, or the 'observance of reasonable commercial standards, prevailing in the area in which the person is located, with respect to the business in which the person is engaged.'" *ASP Enters., Inc. v. Guillory*, 22 So. 3d 964, 977 (La. Ct. App. 2009) (quoting LA. STAT. ANN. § 10:3-103(a)(7)).

"The mere fact that a forgery of a signature on a check is not detected does not prove that a bank's signature verification procedures are not in accordance with reasonable commercial standards of the banking industry." *Id.* Grodner insists that Regions should have detected the fraud by comparing the unauthorized checks to the signature cards on file, but Louisiana law "does not impose a duty upon a paying bank to inspect every check to verify signatures appearing thereon prior to processing the check for payment." *Groue*, 47 So. 3d at 1044. In fact, Louisiana law explicitly provides "that sight examination by a payor bank is not required if its procedure is reasonable and is commonly followed by other comparable banks in the area." LA. STAT. ANN. § 10:4-406 cmt. 4.

There are realities to modern banking that make signature verification impractical. Checks are processed through automation, meaning that "signature verification is a dinosaur." 2 LAW OF BANK DEPOSITS, COLLECTIONS,

No. 18-31057

& CREDIT CARDS § 10.06 (2018). Signature cards are "a quaint historical relic with little practical force in modern banking law." A. Brooke Overby, *Check Fraud in the Courts After the Revisions to U.C.C. Articles 3 and 4*, 57 ALA. L. REV. 351, 359-61 (2005) (describing in detail the modern-day life cycle of a check). Reflecting these facts, the Regions deposit agreement explained the bank's "automated check processing precludes [it] from identifying items that require multiple signatures," authorized Regions to "honor items signed in a different form from that set forth on the signature card," and disclaimed Regions' liability for any unauthorized use of a facsimile signature.[3]

Nothing in the record "demonstrate[s] a deviation from either the Bank's own procedures or local banking standards and practices" or from the terms of the parties' deposit agreement. *ASP Enters.*, 22 So.3d at 977.

AFFIRMED.

---

[3] The district court observed that 64 of the 69 unauthorized checks employed facsimile signatures and thus could *not* have been detected by outdated signature card protocols even if they had been in place.