| | |
|---|---|
| GAUDIN & GAUDIN, A PROFESSIONAL LAW CORPORATION | NO. 19-CA-459 |
| VERSUS | FIFTH CIRCUIT |
| IBERIABANK CORPORATION | COURT OF APPEAL |
| | STATE OF LOUISIANA |

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 762-910, DIVISION "C"
HONORABLE JUNE B. DARENSBURG, JUDGE PRESIDING

March 17, 2020

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Jude G. Gravois, and John J. Molaison, Jr.

**AFFIRMED.**
    **SMC**
    **JGG**
    **JJM**

COUNSEL FOR PLAINTIFF/APPELLANT,
GAUDIN & GAUDIN, A PROFESSIONAL LAW CORPORATION
James E. Shields, Sr.

COUNSEL FOR DEFENDANT/APPELLEE,
IBERIABANK CORPORATION
Pauline F. Hardin
Graham H. Ryan

**CHEHARDY, C.J.**

Plaintiff, Gaudin & Gaudin, A Professional Law Corporation ("Gaudin"), filed suit against defendant, IBERIABANK Corporation ("IberiaBank"), seeking to recover amounts on forged and stolen third-party checks presented to the bank for payment by a Gaudin employee not authorized to receive the funds. The bank cashed the forged checks and the employee retained the money. In addition to claims asserted against IberiaBank under the Louisiana Uniform Commercial Code ("LUCC"), Gaudin alleged, *inter alia*, causes of action for fraud, fraudulent concealment, and fraudulent conversion. Gaudin appeals the trial court's March 14, 2019 judgment granting IberiaBank's motion for summary judgment dismissing all of Gaudin's claims, with prejudice, on the basis that Gaudin's claims are prescribed. For the following reasons, we affirm the trial court's judgment.

**Factual Background and Procedural History**

Gaudin is a law corporation located in Gretna, Louisiana. Gaudin began banking at IberiaBank in 2011 at its 4th Street branch, situated directly across the street from Gaudin's law office. As required under Louisiana law, Gaudin opened a new IOLTA checking account at IberiaBank for each calendar year.[1] Specifically, Gaudin opened a 2014 IOLTA checking account, a 2015 IOLTA checking account, and a 2016 IOLTA checking account (the "Gaudin Accounts"), by executing account agreements with IberiaBank. All three account agreements were executed by Pierre Gaudin, Sr., Pierre Gaudin, Jr., and Hillary Gaudin, each of whom were authorized signers on the Gaudin Accounts. Pursuant to the respective account agreements, only one signature of an "authorized signer" or a stamped signature was required to make a withdraw from the Gaudin Accounts.

---

[1] An IOLTA (Interest on Lawyers Trust Account) "is a pooled, interest-bearing client trust account for funds of clients or third parties which are nominal in amount or to be held for such a short period of time that the funds would not be expected to earn income for the client or third person in excess of the costs incurred to secure such income." *See* Rules of Professional Conduct, Rule 1.15(g).

By executing the account agreements, Gaudin thereby agreed to the terms and conditions of the "Deposit Account Agreement," which imposed a duty to review its monthly statements and to report any unauthorized transaction within thirty days from the date the statement first became available. It is undisputed that Gaudin received copies of the Deposit Account Agreement. Gaudin also acknowledged that it received all of the monthly statements of account sent by IberiaBank showing payment of items on the Gaudin Accounts at issue. The account statements included the item number, amount, and date of payment sufficient to identify each of the items paid in a particular month.

Third party defendant, Lainie Collins, was employed by Gaudin as a bookkeeper from 2009 until her termination in 2016. As Gaudin's bookkeeper, Ms. Collins was responsible for Gaudin's banking activity and was entrusted with control over Gaudin's checkbook. She was authorized to receive and open Gaudin's monthly statements for the Gaudin Accounts and was responsible for notifying her superiors at Gaudin of any irregularities detected. It is undisputed that Ms. Collins' receipt and review of Gaudin's account statements were not supervised. The account agreements authorized the use of a "facsimile" stamp of Pierre Gaudin, Sr.'s signature, which was kept in his office desk. Ms. Collins had regular access to Mr. Gaudin's office and desk.

In March 2016, Gaudin received a notice from IberiaBank that its 2016 IOLTA account was overdrawn, which prompted Gaudin to investigate the overdraft. According to Pierre Gaudin, Sr., "there were duplicate checks, which had been evidently made to the client twice, what [the client] was supposed to [receive] from the settlement, and then a duplicate check was produced and forged with [Pierre Gaudin, Sr.'s] name and the client's name and taken to the bank and cashed." Video surveillance from IberiaBank revealed that Gaudin's employee, Lainie Collins, was the person presenting the stolen checks to IberiaBank and

receiving the money once cashed. IberiaBank contends, and Gaudin does not dispute, that Ms. Collins stole, embezzled, or converted checks from Gaudin Accounts, made them payable to firm clients after case settlements, forged the payee's endorsements on the back of the checks, presented the "double forged checks" at IberiaBank and other banks for payment, and then retained the cash paid on the forged checks drawn on Gaudin Accounts. Ms. Collins' employment with Gaudin was ultimately terminated in 2016 because "she was stealing money" from the firm.[2]

In late April 2016, Gaudin notified IberiaBank that it had discovered numerous allegedly unauthorized transactions relating specifically to the 2016 IOLTA account. IberiaBank's first notice of any specific unauthorized transactions involving Gaudin's 2014 and 2015 IOLTA accounts occurred on October 31, 2017, when IberiaBank received and reviewed Gaudin's responses to discovery.

On July 15, 2016, Gaudin filed a petition for damages alleging, *inter alia*, that IberiaBank was responsible for negligently cashing several fraudulent third party checks written on the Gaudin Accounts between January 1, 2014 and April 2016.[3] According to Gaudin, the stolen checks bore the forged signatures of the authorized signers and were presented to the bank for payment by Gaudin employees not authorized to receive the funds. Gaudin averred that IberiaBank made no effort to authenticate the validity of the checks or to verify the identity of the payees on the checks. Gaudin amended its petition for damages to add

---

[2]     To date, Gaudin has not filed suit against Ms. Collins nor has Gaudin notified authorities of her conduct. According to Gaudin, once it notified IberiaBank of the theft and illegal transactions, the duty and obligation to report the matter to the proper authorities fell to IberiaBank.

[3]     Gaudin contends that IberiaBank is liable for 153 checks written on the Gaudin Accounts between 2014 and 2016.

additional defendants—the "unknown employees of IberiaBank" and IberiaBank's insurer—and additional causes of action, including breach of contract and fraud.

In response to Gaudin's original and first amended petitions, IberiaBank filed peremptory exceptions of prescription and no cause of action, and alternatively, a dilatory exception of vagueness and ambiguity.[4] IberiaBank argued that Gaudin had no cause of action apart from the LUCC and that, pursuant to La. R.S. 10:3–420, all claims asserted by Gaudin arising from actions that occurred prior to July 15, 2015, had prescribed as a matter of law. IberiaBank further argued that it was relieved of all liability to Gaudin pursuant to La. R.S. 10:4–406 and under the terms of the Deposit Account Agreements, which mandated dismissal of all claims due to Gaudin's failure to timely review its account statements and to report the alleged unauthorized transactions. Following a hearing on February 9, 2017, the trial court granted IberiaBank's dilatory exception and ordered Gaudin to amend its petition within thirty days; IberiaBank's exception of prescription was continued. Additionally, the trial court stayed all discovery in the matter until after Gaudin amended its petition.

Gaudin filed a second amended petition for damages on March 9, 2017, adding three IberiaBank employees as defendants and adding causes of action for fraudulent concealment and spoliation of evidence. In response, IberiaBank filed peremptory and dilatory exceptions reasserting its prior arguments. Gaudin filed an opposition to IberiaBank's exceptions, as well as a motion to lift the stay of discovery.

IberiaBank's exceptions and Gaudin's motion to lift the stay came for hearing on August 9, 2017. That day, the trial judge entered judgment granting IberiaBank's peremptory exception of no cause of action, in part, and dismissing

---

[4]    The record shows that after being granted an extension of time to file an answer, on December 21, 2016, IberiaBank filed exceptions, affirmative defenses, an answer and a request for notice.

all of Gaudin's non-LUCC claims, with prejudice. Additionally, the judgment overruled IberiaBank's dilatory exceptions of prematurity as to spoliation and nonconformance with La. C.C.P. art. 891. Gaudin's motion to lift the stay of discovery was also granted. By agreement of the parties, the trial court continued IberiaBank's exception of prescription until after completion of discovery. Following the hearing, a status conference was held, wherein the trial court imposed a discovery deadline of February 28, 2018, and scheduled the matter for trial on August 8, 2018.

On Gaudin's motion, and upon finding "no just reason to delay," on October 11, 2017, the trial court ordered that the August 9, 2017 judgment dismissing all of Gaudin's non-LUCC claims be made final and immediately appealable. Gaudin timely appealed and the matter was docketed accordingly.[5] On January 19, 2018, however, Gaudin filed a motion to withdraw the appeal "without prejudice due to prematurity," which motion this Court granted that same day. No further action regarding the August 9, 2017 judgment was taken by Gaudin. Consequently, the dismissal of all Gaudin's non-LUCC claims against IberiaBank became a final, binding judgment; *only* Gaudin's claims under the LUCC remained.

Three weeks prior to the February 28, 2018 discovery cut-off date, Gaudin filed an unopposed motion to extend the discovery deadline by 90 days, or until May 29, 2018, which the trial court granted. On February 26, 2018, the parties consented to a continuance of the trial and requested that a status conference with the court be held on April 25, 2018, for purposes of scheduling a new trial date and establishing pre-trial deadlines.

On April 6, 2018, IberiaBank filed a motion to compel against Gaudin for its failure to timely produce the documents Gaudin was relying upon to support its claims and calculate its damages. Following a hearing on April 24, 2018, the trial

---

[5] The appeal was docketed as No. 17-CA-698.

court granted IberiaBank's motion and ordered Gaudin to produce the requested documents within 90 days, or by July 23, 2018.

Another status conference was held on July 9, 2018, and a new scheduling order was entered. An October 9, 2018 discovery deadline was imposed and a new trial date was set for April 29, 2019.

After July 23, 2018 passed and Gaudin had yet to comply with the trial court's April 24, 2018 discovery order, IberiaBank filed a motion for sanctions, which was scheduled for hearing on October 3, 2018. Pursuant to a motion to continue the hearing filed by Gaudin on October 2, 2018, the trial court granted Gaudin an additional two weeks to comply with the discovery order and reset the hearing on IberiaBank's motion for sanctions to October 17, 2018. At that hearing, the trial court deferred its ruling and ordered Gaudin to produce all of the requested documents by noon the following day. When Gaudin once again failed to comply with the court's order, IberiaBank filed a supplemental memorandum requesting that its motion for sanctions be reset for hearing.

On October 10, 2018, Gaudin filed a motion to extend the already expired October 9 discovery deadline arguing that several more depositions needed to be taken requiring additional time. Gaudin's motion was scheduled for hearing on November 15, 2018, along with IberiaBank's motion for sanctions. A week prior to the scheduled hearing, Gaudin filed a motion for leave to file a third amended petition (seeking to add additional allegations of fraud and IberiaBank's failure to comply with federal banking laws), which was also set for hearing on November 15, 2018.

Following the November 15, 2018 hearing, the trial court rendered judgment granting IberiaBank's motion for sanctions, in part, and awarding attorney's fees. The trial court denied Gaudin's motion for leave to file a third amended petition, but granted Gaudin until December 31, 2018 to complete all fact discovery relative

to the remaining issues, *i.e.*, Gaudin's claims against IberiaBank under the LUCC.[6] The trial court issued written reasons for judgment on December 6, 2018 and December 14, 2018, respectively.[7]

Thereafter, Gaudin deposed nine IberiaBank employees "pursuant to the [j]udgment" extending the deadline for fact discovery to December 31, 2018. According to Gaudin, the testimony elicited in these depositions revealed that nine employees "aided and abetted the perpetrator(s) in cashing 153 forged third party checks … ." Gaudin submitted the deposition testimony of the nine employees, with corresponding exhibits, to its expert in fraud calculations, Eva Jo Sparks. Relying on the information provided to her, Ms. Sparks issued an expert report concluding that IberiaBank intentionally violated state and federal banking laws by allowing 153 "forged and fraudulent third (3rd) party checks," 129 of which were in excess of $3,000.00, to be cashed without requiring proper forms of identification (such as, social security numbers, driver's license numbers, payor's addresses, phone numbers or dates of birth), and without the endorsement of authorized signers. Ms. Sparks further concluded that because IberiaBank refused to produce certain discovery, "there is prima facie evidence that there remains a presumption of fraud, regarding [IberiaBank]." Ms. Sparks' opined that this fraud "could not have occurred without the aiding and abetting of an inside [IberiaBank] employee."

On February 8, 2019, the deadline for filing dispositive motions, IberiaBank filed a peremptory exception of prescription and motion for summary judgment, as well as a motion to set attorney's fees and costs, which were all set for hearing on

---

[6]     A new scheduling order was entered, which provided that, in addition to the December 31, 2018 deadline for fact discovery, Gaudin's expert report was due by January 31, 2019, and IberiaBank's expert report was due by February 29, 2019. A February 8, 2019 deadline was imposed for filing dispositive motions, and March 1, 2019, was set as the deadline for filing motions *in limine*.

[7]     According to our review of the appellate record, Gaudin did not seek review of the November 15, 2018 ruling.

March 14, 2019.  At 11:00 p.m. on February 26, 2019—the day prior to Gaudin's deadline for filing an opposition to IberiaBank's motion for summary judgment—Gaudin filed several motions, including a motion for leave to file a fourth amended petition, a motion to continue and to extend the time to respond to IberiaBank's motion to set attorney's fees and costs, and a motion to continue and to extend the time within which to respond to IberiaBank's peremptory exception of prescription and motion for summary judgment.  Pursuant to a telephone conference held on March 11, 2019, the trial court set Gaudin's motions for hearing on March 14, 2019, the same day IberiaBank's motions and exception were set to be heard.

Approximately thirty-six hours prior to the scheduled hearing, Gaudin filed a motion for leave to file an out-of-time opposition to IberiaBank's peremptory exception and motion for summary judgment, which included its expert's report and corresponding exhibits.  Gaudin also filed an opposition to IberiaBank's statement of facts and a separate "statement of undisputed material facts."[8]  In response, IberiaBank opposed Gaudin's untimely filings and filed a supplemental reply objecting to Gaudin's untimely opposition.

On March 14, 2019, following a hearing on the pending motions, the trial court denied Gaudin's motion for leave to file a fourth amended petition and its other motions to continue.  The trial court granted IberiaBank's motion to strike Gaudin's late-filed opposition, thereby excluding all of Gaudin's summary judgment evidence.  Finding that no genuine issue of material fact existed, the trial court granted IberiaBank's peremptory exception of prescription and motion for summary judgment dismissing Gaudin's remaining LUCC claims against IberiaBank, with prejudice, based on Gaudin's failure to timely review its account statements and to report the alleged unauthorized transactions.  The trial court also

---

[8]     The record contains no opposition to IberiaBank's motion to set attorney's fees and costs filed by Gaudin.

granted, in part, IberiaBank's motion to set attorney's fees and costs. Written reasons for judgment were issued by the trial court on April 25, 2019. The instant appeal ensued.

**ISSUES PRESENTED FOR REVIEW**

Gaudin presents seven issues on appeal for this Court's review: (1) whether the trial court erred in denying Gaudin's motion for leave to file a fourth amended petition; (2) whether the trial court erred in denying Gaudin's motion to continue and extend the time to respond to IberiaBank's motion to set attorney's fees and costs; (3) whether the trial court erred in granting IberiaBank's attorney fees and costs; (4) whether the trial court erred in denying Gaudin's motion to continue and extend the time to respond to IberiaBank's peremptory exception of prescription and motion for summary judgment; (5) whether the trial court erred in denying Gaudin's motion for leave to file an out-of-time memorandum in opposition to IberiaBank's peremptory exception of prescription and motion for summary judgment; (6) whether the trial court erred in granting IberiaBank's peremptory exception of prescription and motion for summary judgment; and, (7) whether the trial court erred in granting Gaudin's motion *in limine* to exclude expert testimony and other evidence.

**LAW AND DISCUSSION**

I.    *Gaudin's Motion for Leave to File a Fourth Amended Petition*

Louisiana Code of Civil Procedure article 1151 provides that after an answer has been filed, the petition and answer may be amended only by leave of court or by written consent of the adverse party. *Banks v. Parish of Jefferson*, 12-215 (La. App. 5 Cir. 1/30/13), 108 So.3d 1208, 1216. The decision to disallow an amendment to a petition after the answer is filed is within the trial court's sound discretion, and that decision will not be disturbed absent an abuse thereof. *Id.*

Gaudin avers that in the November 15, 2018 judgment, the trial court extended the deadline for fact discovery to December 31, 2018 so that Gaudin could "do what it needed to get done." Gaudin contends the trial court was, in essence, authorizing Gaudin to conduct additional discovery to obtain the factual support Gaudin needed to prove its claims against IberiaBank for fraudulent concealment and fraudulent conversion. With that understanding, Gaudin contends that it took the depositions of nine IberiaBank employees and provided their testimony to an expert, who then prepared a report opining that because "153 checks could not have been cashed without aiding and abetting of these crimes by employees of the [bank]," there was fraudulent concealment and fraud on the part of IberiaBank. Based upon the purported "newly discovered evidence" obtained from the depositions and conclusions in its expert's report, Gaudin contends that it was "entitled" to file a fourth amended petition in order to add the nine IberiaBank employees as defendants, to reassert its claims for fraudulent concealment and fraudulent conversion that had previously been dismissed, and to add an additional cause of action for breach of applicable banking regulations of which it was not previously aware. According to Gaudin, it was error for the trial court to deny the motion for leave to file the fourth amended petition. We disagree.

The record reflects that Gaudin previously filed two amended petitions.[9] Our review of the claims that Gaudin seeks to add in its fourth amended petition reveals that they are the same claims Gaudin asserted in its second amended petition that the trial court dismissed, *with prejudice*, in its August 9, 2017 judgment, which judgment became binding upon Gaudin once Gaudin dismissed its appeal. Specifically, the trial court dismissed all of Gaudin's non-LUCC claims, including claims for fraudulent concealment and fraudulent conversion,

_____

[9] Though Gaudin filed a motion to file a third amended petition, this motion was denied and the third amended petition was rejected.

and only allowed Gaudin to proceed against IberiaBank with its LUCC claims. Additionally, in its fourth amended petition, Gaudin asserts a cause of action for "negligent breach of state and federal national banking regulations," which Gaudin previously asserted in its third amended petition that was rejected by the trial court when it denied Gaudin's motion for leave to file.

In its reasons for judgment, the trial court explained that it granted Gaudin's motion to extend the discovery deadline, not so that Gaudin could create new causes of action or breathe life into claims previously dismissed with prejudice, but solely to allow Gaudin to complete discovery regarding the causes of actions that remained against IberiaBank, *i.e.*, the LUCC claims. Additionally, the trial court rejected Gaudin's contention that the information used to support its fourth amended petition was newly discovered. According to the trial court, Gaudin had been given ample opportunity to conduct discovery prior to the expiration of the discovery deadline, which would have led to the allegations pled in the fourth amended petition. According to the trial court, to allow Gaudin to continue filing amended petitions "was unfair and prejudicial" to IberiaBank, especially in light of a pending trial date only six weeks away. Based upon our review of the record, we cannot say the trial court abused its discretion by denying Gaudin's request to file a fourth amended petition. *See Banks*, 108 So.3d at 1217-18. Accordingly, this assignment is without merit.

## II.   *Attorney's Fees and Costs*

By its second and third issues presented for review, Gaudin questions whether the trial court erred in denying Gaudin's motion to continue and extend the time to respond to IberiaBank's motion to set attorney's fees and costs, and whether the trial court erred in granting IberiaBank attorney's fees and costs.

## A. Gaudin's Motion to Continue Hearing and Extend the Time to Respond

Gaudin contends that IberiaBank's motion seeking attorney's fees and costs "was absurd" and that IberiaBank "prepared a fraudulent bill in an attempt to get [Gaudin] to dismiss its claims plead … ." According to Gaudin, the trial court erred in denying its motion to "continue and/or extend" the hearing on IberiaBank's motion for attorney's fees and costs because Gaudin was entitled to depose the affiant who attested to IberiaBank's fraudulent bill.

Louisiana Code of Civil Procedure article 1601 provides for discretionary grounds for granting a continuance "if there is good ground therefor." The trial court must consider the particular facts of a case when deciding whether to grant or deny a continuance, including the diligence and good faith of the party seeking the continuance and other reasonable grounds. *McCoy v. Manor*, 18-1228 (La. App. 1 Cir. 5/9/19), 277 So.3d 344, 347. The decision to grant or deny a continuance under La. C.C.P. art. 1601 is within the sound discretion of the trial judge whose ruling will not be disturbed on appeal absent a clear showing of abuse of that discretion. *Williams v. A Day to Remember Invitations, L.L.C.*, 06-757 (La. App. 5 Cir. 3/13/07), 956 So.2d 30, 33.

Louisiana District Court Rule 9.9(c) sets forth the time periods within which a party is required to file memoranda opposing motions. Rule 9.9(c) states, in pertinent part:

> A party opposing [a] … motion shall concurrently furnish the trial court and serve on all other parties an opposition memorandum so it is received at least eight calendar days before the scheduled hearing … .

Pursuant to Rule 9.9(e), a party that fails to comply with Rule 9.9(c) may forfeit the privilege of oral argument. If a party fails to timely serve an opposition memorandum, the court may allow a continuance.

In the instant matter, IberiaBank filed a motion for attorney's fees and costs on February 7, 2019, and the motion was served on Gaudin one week later. The trial court set the motion for hearing on March 14, 2019. Though the record indicates that at 11:01 p.m. on February 26, 2019, Gaudin filed a motion to continue the hearing, which was well within the required eight days pursuant to Rule 9.9(c), due to the Mardi Gras holidays, the trial court did not receive Gaudin's motion to continue until after the deadline date for filing an opposition had passed. Notwithstanding, the trial court set Gaudin's motion to continue for contradictory hearing to determine whether Gaudin had "good ground[s]" for requesting a continuance.

At the scheduled hearing, the only "ground" Gaudin stated for its request was so that it could conduct discovery as to the amount of attorney's fees IberiaBank was claiming, which Gaudin contended "reeks of fraud and possible extortion." Having provided no evidence to support its contention, the trial court denied Gaudin's request on the basis that "[m]ere speculation is not enough to show good cause for a continuance." We find no abuse of the trial court's discretion in denying Gaudin's motion for continuance.

**B. Award of Attorney's Fees and Costs**

Gaudin did not file an opposition to IberiaBank's motion seeking attorney's fees and costs claiming it needed the deposition of IberiaBank's affiant in order to respond to the purportedly false and fraudulent affidavit IberiaBank submitted. Gaudin contends the trial court erred in awarding attorney's fees and costs without first allowing Gaudin to conduct discovery in order to determine the veracity and accuracy of the affidavit and in order to properly defend against IberiaBank's claim.

Louisiana Code of Civil Procedure article 1471(c) mandates the imposition of attorney fees and reasonable expenses when a party fails to obey a court order,

unless the court determines that the failure to obey was substantially justified or the imposition of an expense award is otherwise deemed unjust. It is well established that a trial court has much discretion in imposing sanctions for failure to comply with a discovery order, as well as its choice of sanctions, including the imposition of attorney fees and costs, and its ruling will not be reversed absent a clear showing of abuse of discretion. *Dufour v. Dow Chemical Co.*, 12-912 (La. App. 5 Cir. 5/23/13), 119 So.3d 630, 633.

In the case *sub judice*, the trial court imposed sanctions upon Gaudin, by awarding attorney's fees and court costs to IberiaBank, for Gaudin's failure to comply with the court's order compelling discovery. Prior to calculating the amount due, the trial court required IberiaBank to "provide documentation to show the amount of attorney fees incurred in filing these motions." Thereafter, IberiaBank submitted an affidavit of its attorney, Graham Ryan, and invoices to the court to substantiate the fees and costs it incurred. After reviewing IberiaBank's documentation, and finding that some of the items set forth in the invoices were related to the actual hearing on IberiaBank's motion for sanctions and that some of the discovery IberiaBank conducted pertained to the entirety of the case, the trial court reduced the amount of attorney's fees IberiaBank requested by half and awarded to it $27,027.00. The trial court also awarded $1,252.47 to IberiaBank for the full amount of the court costs incurred.

The record shows that the trial court awarded sanctions, in part, to IberiaBank on November 15, 2018. Thereafter, Gaudin was served with IberiaBank's motion to set attorney's fees and costs on February 15, 2019, and the hearing on the motion was scheduled for March 14, 2019. Despite having four months from the date sanctions were first imposed—and one month from the date it received IberiaBank's affidavit documenting the attorney's fees and costs it requested—to conduct the discovery Gaudin argues it needed to oppose

IberiaBank's motion, the record is devoid of any indication that Gaudin sought such discovery. Clearly, Gaudin had ample opportunity to oppose IberiaBank's motion to set attorney's fees and costs, but did not. Finding no abuse of the trial court's discretion, we affirm its award of attorney's fees and court costs assessed against Gaudin.

## III. *Peremptory Exception of Prescription and Motion for Summary Judgment*

### A. Gaudin's Motion to Continue Hearing and Extend the Time to Respond

On appeal, Gaudin questions whether the trial court erred in denying its motion to continue the hearing on IberiaBank's peremptory exception and motion for summary judgment and to extend the time for Gaudin to respond. As previously stated, La. C.C.P. art. 1601 provides that a trial court may grant a motion to continue "if there is good ground therefor." Moreover, "the decision to grant or deny a continuance is within the sound discretion of the trial judge whose ruling will not be disturbed on appeal absent a clear showing of abuse of that discretion." *Williams*, 956 So.2d at 33.

The record shows that the deadlines for discovery and filing dispositive motions were extended numerous times throughout this litigation. The original deadline for filing dispositive motions was set for March 30, 2018, but was extended by seven months to November 5, 2018, in order to accommodate Gaudin's expressed need to take additional depositions of IberiaBank's current and former employees. On November 15, 2018, the trial court again extended the deadline for filing dispositive motions to February 8, 2019, in order to accommodate Gaudin's claim that it needed additional time to complete fact discovery, and so that any dispositive motion filed could be opposed and heard within the mandatory time period prior to the pending trial date of April 29, 2019.

IberiaBank filed its peremptory exception of prescription and motion for summary judgment on the February 8, 2019 deadline, and the matter was scheduled for hearing three weeks later on March 14, 2019. Service of the exception and motion was made upon Gaudin on February 14, 2019. Pursuant to La. C.C.P. art. 966(B)(2) and La. Dist. Ct. R. 9.9(c), the deadline for Gaudin to file its opposition to IberiaBank's motion, and all documents in support of the opposition, was February 27, 2019. Instead of filing an opposition, however, at 10:59 p.m. on the evening prior to the deadline, Gaudin filed a motion to continue the hearing and to extend the time for it to respond to IberiaBank's motion. The trial court set Gaudin's motion to continue for a contradictory hearing on March 14, 2019, to determine whether "good ground" existed to grant Gaudin's request.

At the hearing, the only reason stated by Gaudin to support its need for a continuance or additional time to oppose IberiaBank's peremptory exception and motion for summary judgment was that Gaudin had not yet obtained IberiaBank's expert report. In response, IberiaBank argued that it did not rely upon an expert report to support either its peremptory exception or its motion for summary judgment and, thus, there was no "good ground" to support Gaudin's request for a continuance. The trial court agreed and, accordingly, denied Gaudin's request.

Upon review, we likewise conclude that Gaudin failed to articulate any "good ground" to support its request for a continuance or extension to file an opposition. Consequently, we find no abuse of the trial court's discretion in denying Gaudin's motion.

### B. Gaudin's Motion for Leave to File an Opposition Memorandum Out-of-Time

Gaudin contends the trial court erred in denying its motion to file an opposition memorandum to IberiaBank's peremptory exception of prescription and

motion for summary judgment out-of-time, and excluding its summary judgment evidence in support of its late-filed opposition. We disagree.

As stated above, pursuant to La. C.C.P. art. 966(B)(2) and La. Dist. Ct. R. 9.9(c), the deadline for Gaudin to file its opposition to IberiaBank's motion for summary judgment was February 27, 2019, fifteen days prior to the March 14, 2019 hearing. Instead, Gaudin waited to file its opposition and supporting documentation until March 12, 2019 at 9:00 p.m. IberiaBank opposed Gaudin's late-filed opposition arguing that the fifteen-day opposition deadline "is mandatory" and that Louisiana law precludes consideration of the late-filed opposition or opposing documents "because it lacks good cause." Specifically, Gaudin's stated reason for failing to timely file an opposition was its desire to obtain IberiaBank's expert report, upon which IberiaBank did not rely to support its motion for summary judgment as its motion was based solely on a legal issue under the LUCC, unaffected by expert testimony. Additionally, IberiaBank did file an expert report on February 28, 2019, the deadline for filing, yet the record shows that Gaudin waited another twelve days—only thirty-six hours prior to the hearing—to file its untimely opposition. Finding no good cause existed to allow Gaudin's opposition memorandum or opposing documents into the record, the trial court denied Gaudin's motion to file its opposition out-of-time and ruled that by failing to comply with the deadlines, Gaudin forfeited its right to present oral argument.

After a thorough review of the record, and the applicable codal articles, district court rules, and jurisprudence, we find the trial court did not abuse its discretion in excluding Gaudin's untimely filed opposition and supporting documentation. La. C.C.P. art. 966(B)(2); La. Dist. Ct. R. 9.9(c); *Guillory v. Chapman*, 10-1370 (La. 9/24/10), 44 So.3d 272 (*per curium*); *Buggage v. Volks*

*Constructors*, 06-175 (La. 5/5/06), 928 So.2d 536 (*per curiam*); *Gisclair v. Bonneval*, 04-2474 (La. App. 1 Cir. 12/22/05), 928 So.2d 39, 42.

### C. IberiaBank's Peremptory Exception of Prescription and Motion for Summary Judgment

Liberative prescription is a mode of barring actions as a result of inaction for a period of time. La. C.C. art. 3447. There is no prescription other than that established by legislation. La. C.C. art. 3457. Although the party pleading prescription ordinarily has the burden of proving it, when the face of the petition shows that the action has prescribed, the burden shifts to the plaintiff to show why the claim has not prescribed. *Hogg v. Chevron USA*, 09-2632 (La. 7/6/10), 45 So.3d 991, 998.

Although the defense of prescription is typically asserted by peremptory exception, it may also be raised by motion for summary judgment. *Hogg*, 45 So.3d at 997. When prescription is raised by motion for summary judgment, review is *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Id.* The summary judgment procedure is favored and shall be construed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2); *Trench v. Winn-Dixie Montgomery LLC*, 14-152 (La. App. 5 Cir. 9/24/14), 150 So.3d 472, 475. A court must grant a motion for summary judgment "[i]f the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). If the mover will not bear the burden of proof at trial, his burden on the motion requires him not to negate all essential elements of the plaintiff's claim, but rather to point out that there is an absence of factual support for one or more elements essential to the claim. La. C.C.P. art. 966(D)(1); *BFH v. First National Bank USA*, 15-120 (La. App. 5 Cir. 11/19/15), 181 So.3d 204, 209. The burden is

on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1). In this situation, the plaintiff may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or otherwise, but must set forth specific facts showing that there is a genuine issue for trial. La. C.C.P. art. 967(B). Only evidence properly admitted for purposes of the motion for summary judgment shall be considered by the court in its ruling on the motion. La. C.C.P. art. 966(D)(2); *BFH*, 181 So.3d at 209.

### 1. *La. R.S. 10:4–406*

The general rule is that when a bank pays on a forged check, it is liable for the amount of the check, plus legal interest from the date of judicial demand. *See Marx v. Whitney Nat'l Bank*, 97-3213 (La. 7/8/98), 713 So.2d 1142, 1145. Notwithstanding this general rule requiring the bank to bear the risk of loss for a forged instrument, Louisiana law provides that in certain circumstances, a customer may be precluded from asserting a claim against a bank that has paid on a forged instrument. *Id.* Specifically, pursuant to La. R.S. 10:4–406, "a customer is precluded from having funds paid out on a forged instrument restored to his account if his failure to exercise reasonable care in handling the account, either before or after the forgery, substantially contributed to the loss." *Marx*, 713 So.2d at 1145.

In the case *sub judice*, the basis for the trial court's grant of summary judgment in favor of IberiaBank dismissing the remainder of Gaudin's claims against it, with prejudice, was that Gaudin's "[L]UCC claims [were] prescribed under Louisiana Revised Statute § 10:4–406(c)" because Gaudin failed to timely examine its account statements and report the alleged unauthorized transactions. Pursuant to La. R.S. 10:4–406(a), "[a] bank that sends or makes available to a customer a statement of account showing payment of items for the account shall

either return or make available to the customer the items paid or provide information in the statement of account sufficient to allow the customer reasonably to identify the items paid. The statement of account provides sufficient information if the item is described by item number, amount, and date of payment." La. R.S. 10:4–406(c), which imposes a duty on bank customers to examine their statements and to promptly notify the bank of any unauthorized transactions, states:

> If a bank sends or makes available a statement of account or items pursuant to Subsection (a), the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts.

The LUCC further provides that, if a customer fails to comply with those duties to "exercise reasonable promptness" in reviewing its statements and to promptly notify the bank, the customer may be precluded from asserting against the bank the unauthorized transactions. La. R.S. 10:4–406(d)(2). Specifically, La. R.S. 10:4–406(d)(2), otherwise known as the "same wrongdoer" rule, states:

> If the bank proves that the customer failed, with respect to an item, to comply with the duties imposed on the customer by Subsection (c), the customer is precluded from asserting against the bank:
>
> ***
>
> (2) the customer's unauthorized signature or alteration by the same wrongdoer on any item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer had been afforded a reasonable period of time, *not exceeding thirty days*, in which to examine the item or statement of account and notify the bank. [Emphasis supplied.]

The rule stated in Subsection (d)(2) "imposes on the customer the risk of loss on all subsequent forgeries by the *same wrongdoer* after the customer had a reasonable time to detect an initial forgery if the bank has honored subsequent forgeries prior to notice." *Marx*, 713 So.2d at 1146. [Emphasis in original.] In *Marx*, the Supreme Court found that because the plaintiff failed to review and notify the defendant bank of the initial forgeries appearing in a bank statement within thirty days of receipt of that statement, he was "precluded" from asserting causes of action against the bank for all subsequent forgeries by the same unauthorized person. *Id.* at 1147.

Additionally, La. R.S. 10:4–406(f) imposes an absolute bar to any claim by a bank customer based upon an unauthorized transfer not reported within one year after the bank statement has been made available. *Ducote v. Whitney Nat. Bank*, 16-574 (La. App. 5 Cir. 2/22/17), 212 So.3d 729, 734, *writ denied*, 17-522 (La. 5/26/17), 221 So.3d 860. This period may be shortened by the bank account agreement—which, in this case, the deposit account agreement between IberiaBank and Gaudin shortened the one-year period to thirty days. *Id.* Section 10:4–406(f) applies "without regard to care or lack of care of either the customer or the bank." *Id.*

In the instant case, it is undisputed that IberiaBank sent and made available to Gaudin monthly statements for the Gaudin Accounts that detailed *all* of the alleged unauthorized transactions sufficient for Gaudin to be able to identify the checks. Each check transaction was reflected on the account statement sent to Gaudin at the end of the month in which the check transaction occurred. Gaudin concedes that it received all of the account statements at issue in this case. It is also undisputed that Gaudin agreed to IberiaBank's deposit account agreement, which required Gaudin to review and timely report any unauthorized transactions

appearing on these account statements within a time "not to exceed a total of thirty days from when the statement was first sent or made available."

Here, the earliest alleged unauthorized transaction identified in the record is dated May 8, 2014. Gaudin does not dispute that it received the May 2014 account statement, which would have reflected the May 8 check transaction by Ms. Collins. It is uncontested that Gaudin did not notify IberiaBank of any specific unauthorized check transaction until on or after April 29, 2016, and that this notification was solely in regards to certain check transactions involving the 2016 IOLTA account.[10] As to Gaudin's 2014 and 2015 IOLTA accounts, it is unrefuted that IberiaBank was not notified of any specific unauthorized transactions involving these accounts until October 31, 2017, when IberiaBank received Gaudin's responses to discovery. Moreover, it is undisputed that all of the alleged unauthorized checks at issue were paid *before* Gaudin first notified IberiaBank on April 29, 2016.

The summary judgment evidence presented by IberiaBank indicates that Gaudin did not notify IberiaBank within thirty days of the first unauthorized check transaction appearing on its May 30, 2014 account statement. Nor did Gaudin notify IberiaBank of any unauthorized check transactions appearing on any of the subsequent account statements made available to Gaudin in 2014, 2015, and in January, February, or March 2016. We also find no competent evidence in the record to refute that *all* the unauthorized check transactions were made by the same wrongdoer, Lainie Collins. Accordingly, we find no error in the trial court's finding that Gaudin's LUCC claims against IberiaBank were prescribed or otherwise barred by the applicable provisions of La. R.S. 10:4–406 outlined above.

_____

[10] According to the record, the most recent alleged unauthorized transaction involved a check dated April 16, 2016, which had already been paid when Gaudin first notified IberiaBank on or after April 29, 2016. "General notice to the bank that a theft or forgery has, or might have, occurred is not sufficient notice for purposes of La. R.S. 10:4–406(f). Rather, specific notice of the particular items at issue is required." *ASP Enterprises*, 22 So.3d at 979-80.

## 2. *La. R.S. 10:3–420*

Gaudin's LUCC claims against IberiaBank for conversion are also time-barred pursuant to La. R.S. 10:3–420. A cause of action for the conversion of a negotiable instrument under the LUCC is subject to a separate one-year prescriptive period under La. R.S. 10:3–420, which provides, in pertinent part:

> (a) An instrument is converted when
>
> …
>
> (iii) it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.
>
> …
>
> (f) Any action for conversion … prescribes in one year.

As previously established, IberiaBank made payment with respect to numerous instruments (checks) for a person (Lainie Collins) not entitled to enforce the instrument or receive payment (the payee was always someone other than Lainie Collins).[11] We find that La. R.S. 10:3–420 governs Gaudin's claim for conversion of instruments and that the one-year prescriptive period applies to all instruments allegedly converted prior to July 15, 2015, more than one year prior to Gaudin's filing suit on July 15, 2016. *See BFH*, 181 So.3d at 208; *ASP Enterprises*, 22 So.3d at 972; *Peak Performance Physical Therapy & Fitness, LLC v. Hibernia Corporation*, 07-2206 (La. App. 1 Cir. 6/6/08), 992 So.2d 527, 531, *writ denied*, 08-1478 (La. 10/3/08), 992 So.2d 1018.

## 3. *The Deposit Account Agreements*

As previously observed, pursuant to the respective Deposit Account Agreements existing between Gaudin and IberiaBank relative to the Gaudin Accounts, Gaudin had a separate duty to promptly examine its account statements

---

[11] While Gaudin suggests that Ms. Collins was aided and abetted in this check-cashing scheme, there is no competent evidence in the record to refute that anyone other than Ms. Collins was responsible for the unauthorized check transactions at issue in this case.

and to notify the bank of any unauthorized transaction discovered, or that should have been discovered, within thirty days from when the statement was first sent or made available to it.  Gaudin does not dispute that it received statements for its 2014 and 2015 IOLTA accounts and did not notify the bank of any unauthorized transactions appearing therein until October 2017 in its responses to discovery. Regarding the 2016 IOLTA account, the record shows that account statements were sent to Gaudin on January 29, 2016 and February 29, 2016, and that thirty days after the statements had been made available elapsed without notification to IberiaBank of any unauthorized transaction discovered on those statements.  Thus, Gaudin's claims against IberiaBank on unauthorized check transactions that occurred prior to March 2016 are also precluded by the express terms of the Deposit Account Agreements.  *See Ducote*, 212 So.3d at 729.

### 4.  *Fraudulent Concealment and Contra Non Valentum*

Once IberiaBank established the foregoing facts, it was incumbent upon Gaudin to come forward with competent evidence that its claims were not prescribed or otherwise barred by La. R.S. 10:4–406, La. R.S. 10:3–420, or under the express terms of the 2014, 2015 and 2016 Account Deposit Agreements to which it had agreed.  In this regard, while Gaudin does not contest receipt of the monthly account statements or the timeline of events, it urges that the narrow exception of *contra non valentum*, based on a fraudulent concealment theory, applies to suspend prescription of its claims against IberiaBank.[12]  Put simply,

---

[12]     *Contra non valentum*, which means that prescription does not run against a person who could not bring his suit, is a jurisprudential doctrine under which prescription may be suspended.  *Carter v. Haygood*, 04-646 (La. 1/19/05), 892 So.2d 1261, 1268.  The doctrine of *contra non valentum*, an exception to the statutory prescriptive period, only applies in "exceptional circumstances," where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues.  *Specialized Loan Servicing, LLC v. January*, 12-1225 (La. 6/28/13), 229 So.3d 582, 585.  The Louisiana Supreme Court has recognized four instances where *contra non valentum* can apply: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's actions; (2) where there was some condition coupled with a contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectively to prevent the creditor from availing himself of his cause of action; or (4) where some cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by

Gaudin contends that IberiaBank fraudulently concealed Ms. Collins' embezzlement. In support, Gaudin relies on the report of its expert fraud examiner, Eva Sparks, "which clearly shows fraudulent concealment [by IberiaBank], spoliage of evidence, and confessions of violations of National banking laws and statutes, through the testimony and exhibits of the nine depositions of [IberiaBank's] employees." In further support, Gaudin contends that IberiaBank destroyed or failed to preserve video evidence (*i.e.*, alleged spoliation of evidence) that would have substantiated its claim that IberiaBank's employees fraudulently concealed or aided and abetted in Ms. Collins' check-cashing scheme. Thus, at the very least, Gaudin argues that there remains a genuine issue of material fact as to whether IberiaBank fraudulently concealed the forged checks entitling Gaudin to invoke the *contra non valentum* exception to defeat IberiaBank's motion for summary judgment. We disagree.

The trial court specifically rejected Gaudin's fraudulent concealment theory explaining in its reasons for judgment that it "had provided [Gaudin] ample opportunity for discovery regarding the alleged fraud claims … [but] [Gaudin] failed to show evidence of any fraud claims." We, likewise, reject Gaudin's argument. On *de novo* review, we find that Gaudin has failed to offer any competent summary judgment evidence that would defeat IberiaBank's motion. Having found no abuse of the trial court's discretion in striking Gaudin's late-filed opposition and attached exhibits, including the expert report and deposition testimony of the IberiaBank employees upon which Gaudin relies to support is fraudulent concealment theory, we do not consider them now. Absent these exhibits, there is not a scintilla of evidence to support Gaudin's allegations of fraudulent concealment that would toll the running of prescription or defeat the bar

_____

the defendant. *Id.* Gaudin contends that the third category of the doctrine applies to suspend prescription of its claims against IberiaBank in this case.

of its claims under either La. R.S. 10:4–406, La. R.S. 10:3–420 or the Account Deposit Agreements.

Specifically, Gaudin submitted no admissible evidence to factually refute that Lainie Collins—to whom Gaudin authorized and placed sole responsibility to receive and reconcile its account statements—was the sole perpetrator who embezzled from Gaudin via the checks. Gaudin has adduced no competent evidence to suggest that IberiaBank employees aided or abetted Ms. Collins, or that anyone from IberiaBank even knew about the embezzlement prior to April 2016 when Gaudin first notified the bank of its discovery of an unauthorized check transaction.

After thoroughly reviewing the record, we also find no support for Gaudin's spoliation-of-evidence claim. The theory of "spoliation of evidence" refers to an intentional destruction of evidence for purposes of depriving opposing parties of its use. *Pham v. Continco Intern., Inc.*, 99-945 (La. App. 5 Cir. 3/22/00), 759 So.2d 880, 882. The record is devoid of any admissible evidence that IberiaBank intentionally destroyed evidence to cover up or fraudulently conceal its alleged role in negligently cashing the stolen checks forged by Ms. Collins. To the contrary, IberiaBank submitted evidence establishing that its general practice is to retain approximately ninety days of video surveillance, at which point the hard drive is written over. In response to discovery, IberiaBank produced to Gaudin the video clips it had in its possession spanning from February 22, 2016 to April 19, 2016, and claimed that by May 2016, it had no further videos to produce. In Louisiana, the Supreme Court has held that "public policy in our state precludes the existence of a duty to preserve evidence." *Reynolds v. Bordelon*, 14-2362 (La. 6/30/15), 172 So.3d 589, 592.

Gaudin's conclusory allegations of IberiaBank's "fraudulent concealment," no matter how oft repeated, without any competent supporting testimony or

documentary evidence, are insufficient to create a genuine issue of material fact as to whether IberiaBank "fraudently concealed" Ms. Collins' embezzlement, or to establish that any bank employee knew of the embezzlement before Gaudin notified the bank. *See ASP Enterprises*, 22 So.3d at 974-975 (conclusory statements are insufficient to give rise to any inference of fraud or fraudulent concealment); *Hardin*, 125 So.3d at 500 (bank customer's affidavit voicing speculation that person who cashed altered checks from customer's account had a confederate in the bank did not create a genuine issue of material fact in action against the bank on issue of fraudulent concealment). When a motion for summary judgment is made and supported as provided by law, the adverse party "may not rest on the mere allegations or denials of his pleading," but must "set forth specific facts showing that there is a genuine issue for trial." La. C.C.P. art. 967(B). The instant showing by Gaudin, "based purely on allegation, denial and sharp hypothesis," does not create a genuine issue for trial. *Hardin Compounding Pharmacy, LLC v. Progressive Bank*, 48,397 (La. App. 2 Cir. 9/25/13), 125 So.3d 493, 500.

The record shows that Gaudin was afforded great latitude to conduct discovery in order to uncover at least a scintilla of evidence of fraudulent concealment admissible under La. C.C.P. art. 967, yet failed to timely do so. The trial court did not err in rejecting Gaudin's "fraudulent concealment" theory to defeat IberiaBank's motion for summary judgment. Consequently, with no evidence to support a suspension of prescription, we find the trial court properly granted summary judgment in favor of IberiaBank dismissing the remainder of Gaudin's LUCC claims, with prejudice, as those claims are prescribed.

5. *Violation of Federal Banking Laws and Internal Banking Practices and Procedures*

To the extent Gaudin contends that genuine issues of material fact remain regarding whether IberiaBank violated various state and federal banking laws, in addition to its own internal banking practices and procedures, when it negligently cashed the stolen checks forged by Ms. Collins, our *de novo* review of the record reveals that this claim also lacks merit. In support its contention, Gaudin again relies solely on its expert's report and the deposition testimony of IberiaBank's employees, all of which were stricken from the record and cannot be considered here. Moreover, Gaudin has submitted no competent evidence to establish which federal and state banking laws IberiaBank purportedly violated, or the internal banking practices and procedures IberiaBank failed to follow. Gaudin also presented no evidence showing that any such failure on the part of IberiaBank "substantially contributed to [the] loss" Gaudin sustained. *See* La. R.S. 10:4–406(e). This claim is without merit.

## D. IberiaBank's Motion *in Limine* to Exclude Expert Testimony and Other Evidence

In its last issue presented for review, Gaudin questions whether the trial court erred in granting IberiaBank's motion *in limine* to exclude the expert report of Gaudin's fraud examiner and other exhibits she relied upon to prepare her report. A review of the trial court's judgment, however, indicates that the trial court determined that IberiaBank's motion *in limine* was "moot." In its written reasons for judgment, the trial court stated that it "found that this matter was Moot, since [Gaudin's] case against Defendant IberiaBank has been dismissed with prejudice." Finding no error in the trial court's judgment granting summary judgment in favor of IberiaBank, dismissing all of Gaudin's claims against it, with

prejudice, we likewise find no error in the trial court's determination that IberiaBank's motion *in limine* was moot.

## CONCLUSION

After a thorough *de novo* review of the record, for the reasons assigned, we affirm the trial court's March 14, 2019 judgment in its entirety.

**AFFIRMED.**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**MARCH 17, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 19-CA-459

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE JUNE B. DARENSBURG (DISTRICT JUDGE)
JAMES E. SHIELDS, SR. (APPELLANT)      GRAHAM H. RYAN (APPELLEE)      PAULINE F. HARDIN (APPELLEE)

**MAILED**
LAINIE COLLINS (APPELLEE)
IN PROPER PERSON
2624 CASCADE DRIVE
MARRERO, LA 70072